# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| CHRISTOPHER LULL, | No. 2:17-cv-1211-TLN-EFB PS |
|---|---|
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| COUNTY OF SACRAMENTO, CORY STEWART, MICHAEL DOANE, and DOES 1 to 100, | |
| Defendants. | |

This case was before the court on June 20, 2018, for hearing on defendants' motion to dismiss plaintiff's second amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] ECF No. 24. Attorney Wendy Motooka appeared on behalf of defendants. Plaintiff appeared pro se. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

I.     Background

This action arises out of plaintiff's July 17, 2016 arrest, which occurred when plaintiff was loading a kayak onto a vehicle that was parked in a restricted area of a Sacramento County park. Plaintiff's earlier, first amended complaint was previously the subject of a motion to dismiss. That complaint asserted claims styled as: (1)"Unreasonable Search and Seizure," (2)

---

[1] This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Eastern District of California Local Rule 302(c)(21).

1

"Substantive Due Process," (3) "denial of Equal Protection," (4) "Retaliation for Exercise of Free Speech," (5) and "Violation of the Ca Bane Act." ECF No. 4. at 5-10. Defendants' motion to dismiss was granted, and plaintiff's first, second, and third causes of actions were dismissed without leave to amend. His First Amendment retaliation claim (fourth cause of action) and Bane Act claim (fifth cause of action) claims were dismissed with leave to amend. ECF Nos. 15, 21.

Plaintiff filed a second amended complaint, which is now the subject of the current motion to dismiss. ECF No. 22. The second amended complaint alleges that on July 17, 2016, plaintiff purchased a permit from the County of Sacramento's Regional Parks Department to enable him to use regional park facilities. *Id*. at 3, ¶ 9. Later that day, he used the permit to access River Bend Park beach area, which is located in Rancho Cordova, California. *Id*. at 3, ¶ 10. While plaintiff was loading a kayak onto a parked vehicle, he was confronted by defendant Stewart. *Id*. at 3, ¶ 11. Although the area in which the vehicle was parked was allegedly "not demarcated as a restricted area," plaintiff claims that Stewart "intended to issue a parking citation for the Car being in a [sic] unlawful area." *Id*. at 3, ¶¶ 12, 13.

Stewart asked plaintiff to provide identification, but plaintiff ignored the request and "began to make criticizing gestures and comments towards [Stewart] for his attempts to investigate" plaintiff. *Id*. at 4, ¶ 18. Plaintiff appears to contend that there was no basis for Stewart's request for identification because Stewart did not witness plaintiff commit a crime or operate the parked car. *Id*. at 4, ¶¶ 15, 16. He also claims that Stewart only had the authority to issue a parking citation to the vehicle, not directly to plaintiff. *Id*. at 4, ¶¶ 15, 19. After plaintiff made his criticizing remarks, Stewart "placed himself in the direct path of [plaintiff's] physical movements . . . in order to get [plaintiff's] attention." *Id*. at 4, ¶ 20. Plaintiff allegedly attempted to ignore Stewart by walking around him. *Id*. at 4, ¶ 20. Stewart then placed his hands on plaintiff's chest to stop plaintiff from moving. *Id*. Plaintiff immediately stopped, placed his hands in the air, and asked if he was being detained. *Id*. at 4, ¶ 21. Stewart informed him that he was being detained, and plaintiff then "immediately surrendered to Stewart and became docile." *Id*.

/////

2

Stewart allegedly made another demand for identification, which was again met with verbal criticism and condescending remarks, including "you don't need to know who I am." *Id*. at 4, ¶ 22. Stewart then placed plaintiff in handcuffs, searched him without consent, and placed him in the back of a "patrol vehicle without a warrant." *Id*. at 5, ¶ 25. Plaintiff claims that his identification was obtained during the search, which "effectively chilled [plaintiff's] criticism of" Stewart. *Id*. at 4, ¶ 26.

Judicially noticeable documents show that plaintiff was charged with a violation of California Penal Code 148(A)(1) (resisting, delaying, or obstructing a peace officer), to which he pled no contest.[2] Def.'s RJN No. 2 (ECF No. 24-2 at 43). After plaintiff completed a Deferred Entry of Judgment program, his plea was withdrawn and the criminal action was dismissed. *Id*. at 16, 22.

Despite only being granted leave to amend his First Amendment retaliation claim and Bane Act claim, plaintiff's new complaint also alleges claims for (1) unreasonable search and seizure in violation of the Fourth Amendment, (2) denial of equal protection in violation of the Fourteenth Amendment, (3) retaliation for exercising right to free speech under the First Amendment, and (4) violation of California's Bane Act. ECF No. 23 at 5-9.

Defendants move to dismiss plaintiff's second amended complaint pursuant to Rule 12(b)(6). ECF No. 24.

II. Rule 12(b)(6)'s Standards

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell*

---

[2] Defendants' request for judicial notice of state court records and sections of the Sacramento County Municipal Code is granted. *See* ECF No. 24-2 at 15-48 (RJN Nos. 2-4); *see also, e.g., Hunt v. Check Recovery Sys. Inc.*, 478 F. Supp. 2d 1157, 1160-61 (N.D. Cal. 2007) ("Judicial notice may be taken of 'adjudicative facts' such as court records [and] pleadings . . . ."); *Wood v. City of San Diego*, 2010 WL 2382335, at *5 (S.D. Cal. June 10, 2010) ("Municipal Code sections may be judicially noticed . . . ."). Defendants' request for judicial notice of plaintiff's second amended complaint (ECF No. 24-2 at 4-14 (RJN No. 1)) is denied as unnecessary.

3

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co.*, 710 F.3d at 956. Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228-1229 (9th Cir. 1984).

Pro se pleadings are held to a less-stringent standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). However, the Court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

III. Discussion

    A. Claims Previously Dismissed Without Leave to Amend

Defendants first argue that plaintiff's Fourth and Fourteenth Amendment claims should be dismissed as those claims were previously dismissed without leave to amend. ECF No. 24-1 at 4.

"When a district court grants leave to amend for a specified purpose, it does not thereafter abuse its discretion by dismissing any portions of the amended complaint that were not permitted." *Coppola v. Smith*, 19 F. Supp. 3d 960, 971 (E.D. Cal. 2014); *see also United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*, 473 F.3d 506, 524 (3d Cir. 2007)). "Where a

prior court order granted limited leave to amend, District Courts in this circuit generally strike new claims or parties contained in an amended complaint when the plaintiff did not seek leave to amend." *S.V. v. Delano Union Elementary Sch. Dist.*, 2017 WL 5010345, at *3 (E.D. Cal. Nov. 2, 2017); *see also Benton v. Baker Hughes*, 2013 WL 3353636, at *3 (C.D. Cal. June 30, 2013), *aff'd sub nom. Benton v. Hughes*, 623 F. App'x 888 (9th Cir. 2015) (striking newly added claims because the court's "order granted [the plaintiff] leave to amend only to address the deficiencies in his existing causes of action identified in its order" and "did not grant [the plaintiff] leave to add new claims," and therefore plaintiff's "new claims" exceeded "the scope of the leave to amend granted . . . .").

Here, plaintiff was granted leave to amend only his First Amendment retaliation and Bane Act claims. The claims for violation of the Fourth and Fourteenth Amendment were dismissed without leave to amend. In his opposition, plaintiff "admits the court dismissed plaintiffs [sic] allegation in relation to the Fourth and Fourteenth amendments," and he does not advance any arguments in opposition to striking these claims. ECF No. 25 at 2. Accordingly, plaintiff's first and second causes of action should be stricken.

### B. First Amendment Claim

Plaintiff's First Amendment retaliation claim is brought only against defendant Stewart. Plaintiff claims that in retaliation for criticism and condescending remarks, defendant Stewart "imitated a pretext arrest and search of [plaintiff's] person in an effort to chill" his speech. ECF No. 22 at 8. Stewart moves to dismiss this claim, arguing (1) that the facts alleged by plaintiff are not sufficient to state a First Amendment retaliation claim; and (2) that Stewart is entitled to qualified immunity. ECF No. 24-1 at 4-8.

#### 1. Sufficiency of the Complaint's Allegations

"The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "[T]o demonstrate a First Amendment violation, a plaintiff must provide evidence showing that 'by his actions the defendant deterred or chilled the plaintiff's political speech and such deterrence was a substantial or motivating factor in the

5

defendant's conduct.'" *Lacey v. Maricopa County*, 693 F.3d 896, 916 (9th Cir. 2012) (quoting *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) ("*Mendocino Envtl. Ctr. II*")). This requires plaintiff to show that the officer's "conduct would chill a person of ordinary firmness from future First Amendment Activity," and that the officer's "desire to chill [plaintiff's] speech was a but-for cause of [his] conduct." *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013).

"The Supreme Court has consistently held that the First Amendment protects verbal criticism, challenges, and profanity directed at police officers unless the speech is 'shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" *United States v. Poocha*, 259 F.3d 1077, 1080 (9th Cir. 2001) (quoting *City of Houston v. Hill*, 482 U.S. 451, 461 (1987)); *see also Mackinney v. Nielsen*, 69 F.3d 1002, 1007 (9th Cir. 1995) ("Even when crass and inarticulate, verbal challenges to the police are protected."); *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990) ("The freedom of individuals to oppose or challenge police action verbally without thereby risking arrest is one important characteristic by which we distinguish ourselves from a police state."). Moreover, the U.S. Court of Appeals for the Ninth Circuit "has recognized that a retaliatory police action such as an arrest or search and seizure would chill a person of ordinary firmness from engaging in future First Amendment activity." *Ford*, 706 F.3d at 1193.

Stewart does not dispute that plaintiff's alleged criticism was constitutionally protected speech, nor that a retaliatory arrest is conduct that would chill a person of ordinary firmness from future First Amendment activity. Instead, Stewart argues that plaintiff's retaliation claim fails because plaintiff's own allegations show that he was arrested for physically evading Stewart, not for his statements to Stewart. ECF No. 24-1 at 4-5. But the complaint alleges otherwise.

The second amended complaint alleges that while plaintiff was loading a kayak onto a car, Stewart approached him and asked to talk to him. ECF No. 22 at 3, ¶ 11. Plaintiff responded by stating "no" and continuing to load the kayak on the vehicle. *Id*. Stewart subsequently asked plaintiff to provide identification, a request that plaintiff ignored. *Id*. at 4, ¶ 18. Stewart then allegedly stepped in front of plaintiff "to get [plaintiff's] attention." *Id*. at 4, ¶ 20. Plaintiff

alleges that he tried to ignore Stewart by walking around him, *id*. at 4, ¶ 20, but Stewart placed his hands on plaintiff's chest. *Id*. According to plaintiff, he immediately stopped and placed his hands in the air, and then asked if he was being detained. *Id*. at 4, ¶ 21. Stewart allegedly told plaintiff that he was being detained, and, according to plaintiff, plaintiff "immediately surrendered to Stewart and became docile." *Id*. at 4, ¶ 21. When Stewart again asked plaintiff for identification, plaintiff continued his verbal criticism and made condescending remarks, including stating "you don't need to know who I am." *Id*. at 4, ¶ 22. Plaintiff then asked if he was being charged with an infraction, to which Stewart responded he "very well might be, yes." *Id*. at 5, ¶ 24. According to the complaint, Stewart then placed plaintiff in handcuffs, searched his person, and placed him in the back of a patrol vehicle where he was detained for a period of approximately 45 minutes. *Id*. at 5, ¶¶ 24-27. Plaintiff concludes that Stewart detained, arrested, and searched him in retaliation for plaintiff having exercised his right to criticize Stewart for the initial contact and interaction. *Id*. at 8, ¶ 3. Plaintiff claims that Stewart initiated a pretextual arrest and searched plaintiff in response to those criticisms and as an effort to chill plaintiff's critical comments. *Id*. at 8, ¶ 5. Plaintiff further alleges that [t]he County of Sacramento's protocol for issuing parking citations directs [Stewart] to issue citations to vehicles without naming the owner of the vehicle or the occupant and in this instance, [Stewart] retaliated against [plaintiff] for his criticism by arresting him instead of following County and State authority for issuance of Parking and Standing citations." *Id*. at 8.

      If the facts as alleged are taken as true, a fact finder could conclude that Stewart initially intended to simply write a parking ticket or citation, but became irritated with plaintiff's mouthing off, and that it was the latter that motivated an arrest. Contrary to the argument in defendant's motion, the factual allegations of the new complaint do not show that plaintiff engaged in any physical conduct that was obstructive, resistive of restraint, or otherwise physically interfered with Stewart's performance of his duties. Rather, if the complaint is believed, plaintiff ignored a request for identification and mouthed off to the officer. At most, he tried to walked around Stewart but was stopped, at which point, according to the complaint, plaintiff placed in hand in the air and submitted to being hand cuffed and detained.

7

Here, the question is whether the facts as alleged in the complaint show that plaintiff was hand cuffed and detained due to legitimate law enforcement activities or as a means to stop or inhibit speech. "A plaintiff may not recover merely on the basis of a speculative chill due to generalized and legitimate law enforcement activities." *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 14 F.3d 457, 464 (9th Cir. 1994) ("*Mendocino Envtl. Ctr. I*") (internal quotations omitted). Instead, the plaintiff must allege that the defendant intended to inhibit speech. *Mendocino Envtl. Ctr. II*, 192 F.3d at 1283. The intent to inhibit speech can be established either through direct or circumstantial evidence. But because "[d]irect evidence of improper motive . . . will only rarely be available," *Mendocino Envtl. Ctr. II*, 192 F.3d at 1302, a defendant's substantial motivation to chill speech will likely be established by circumstantial evidence, including: (1) the proximity in time between plaintiff's protected expression and the allegedly retaliatory actions; (2) defendant's express opposition to plaintiff's speech; and (3) falsity or pretext of defendant's proffered explanations for his action. *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003). Although to survive dismissal plaintiff must sufficiently allege that Stewart intended his actions to chill plaintiff's speech, "the issue of causation ultimately should be determined by a trier of fact . . . ." *Ford*, 706 F.3d at 1194; *cf Mendocino Envtl. Ctr. II*, 192 F.3d 1283 ("[Q]uestions involving a person's state of mind are generally factual issues inappropriate for resolution by summary judgment.").

Viewing the allegations in the light most favorable to plaintiff, the allegations here are sufficient to state a First Amendment retaliation claim. Although plaintiff does allege that he attempted to walk around Stewart, he further claims that once he was physically stopped and informed that he was being detained, plaintiff did not take any actions that could be construed as physically evasive. Furthermore, he alleges that he was arrested only after he continually engaged in verbal criticism and refused to produce identification. While Stewart was authorized to detain plaintiff for the limited purpose of investigating a crime (*i.e.*., the infraction of a vehicle parked in a restricted area), plaintiff was within his rights to ignore Stewart's questions. *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (where an officer has reasonable suspicion that a particular person has committed a crime, the officer "may detain that person briefly . . . [and] ask

8

the detainee a moderate number of questions to determine his identity and to try an obtain information confirming or dispelling the officer's suspicions. But the detainee is not obligated to respond."); *see also People v. Quiroga*, 16 Cal. App. 4th 961, n.2 (1993) (finding that protected speech may not be considered in assessing violation of Cal. Penal Code § 148, and observing that a "defendant's refusal to identify himself or to answer questions [is] protected speech."); *see also In re Gregory S.*, 112 Cal. App. 3d 764, 771, 778 (1980) (holding that while the defendant was free to refuse to identify himself or to answer questions, his forceful attempt to leave—which involved the defendant struggling and attempting to pull his arm away from the investigating officer—violated section 148).

Stewart argues, however, that plaintiff was required to produce his license pursuant to California Vehicle Code § 12951(b), which provides that "[t]he driver of a motor vehicle shall present his or her license for examination upon demand of a peace officer enforcing the provisions of this code." But the second amended complaint does not allege that plaintiff was driving the vehicle parked in the restricted area. Instead, it alleges that plaintiff was standing next to the vehicle and loading a kayak onto the vehicle when he was accosted by Stewart. ECF No. 22 at 3, ¶ 11. Although plaintiff does not expressly deny driving the vehicle, he does allege that Stewart "did not witness [plaintiff] operate or park the Car prior to detaining" him. *Id*. at 4, ¶ 16. Thus, the complaint's allegations do not establish a violation of California Vehicle Code § 12951(b).

Stewart next argues that plaintiff's no contest plea to violating California Penal Code 148(a)(1) conclusively establishes that his actions were lawful. ECF No. 26 at 3. Stewart contends that a criminal defendant cannot be convicted of Penal Code section 148 unless the officer was acting lawfully at the time of the arrest. *Id*.; *see Smith*, 394 F.3d at 695 ("If the officer was not performing his or her duties at the time of the arrest, the arrest is unlawful and the arrestee cannot be convicted under Penal Code section 148, subdivision (a) . . . . Excessive force used by a police officer at the time of the arrest is not within the performance of the officer's duty.") (citation and quotations omitted).

/////

9

Though phrased differently, Stewart is essentially arguing that plaintiff's no contest plea concedes that his arrest was supported by probable cause and therefore lawful. But that argument is foreclosed by Ninth Circuit precedent which has made clear that "police action motivated by retaliatory animus [is] unlawful, even if probable cause existed for [the] action." *Ford*, 706 F.3d at 1196. Thus, the fact that a defendant officer "had probable cause is not dispositive. But it undoubtedly has high probative force." *Dietich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008) (affirming district court's grant of summary judgment where there was "very strong evidence of probable cause and very week evidence of a retaliatory motive.").

Thus, even if Stewart had a legal basis for arresting plaintiff, the arrest would still violate plaintiff's First Amendment right to free speech if the arrest was motivated by retaliatory animus. Accordingly, the allegations in the new complaint sufficiently allege a First Amendment retaliation claim against defendant Stewart.

2. Qualified Immunity

Stewart also argues that he is entitled to qualified immunity against plaintiff's retaliatory arrest claim. ECF No. 24-1 at 5-8. Qualified immunity protects government officials from liability for civil damages where a reasonable official would not have known that his conduct violated a clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). In resolving questions of qualified immunity, "courts engage in a two-pronged inquiry." *Tolan v. Cotton*, 572 U.S. 650, 655 (2014) (per curiam). "The first asks whether the facts, taken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a federal right." *Id*. at 655-56 (citation and bracketing omitted). "The second prong . . . asks whether the right in question was clearly established at the time of the violation." *Id*. at 656 (citation omitted).

A right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. Clearly established law should not be defined "at a high level of generality"; rather, it "must be particularized to the facts of the case." *White v. Pauly*, ––– U.S. ––––, 137 S.Ct. 548, 552 (2017) (per curiam) (citation omitted). While this standard does not require "a case directly

on point," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), courts typically identify analogous cases, i.e., ones in which officials "acting under similar circumstances" violated the same constitutional provision, *White*, 137 S.Ct. at 552. To be analogous, however, the case need not be "materially similar." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *see also Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam) (stating that, "in an obvious case," general legal standards may clearly establish law "without a body of relevant cases" (citing *Hope*, 536 U.S. at 738)); *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001) (citation omitted) ("[E]ven if there is no closely analogous case law, a right can be clearly established on the basis of common sense.").

In the Ninth Circuit, to assess whether a right is clearly established, courts first look to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Cmty. House, Inc. v. City of Boise,* 623 F.3d 945, 967 (9th Cir. 2010) (citation omitted). Absent binding precedent, courts should consider all relevant decisional law. *Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir. 1985).

As discussed above, plaintiff has sufficiently alleged a violation of the First Amendment. Thus, Stewart is entitled to qualified immunity only if the law was not clearly established that an officer may not arrest an individual in retaliation for the exercise of protected speech. As early as 1990, the Ninth Circuit held that it is clearly established that police officers may not detain an individual as punishment for exercising free speech. *Duran v. City of Douglas*, 904 F.2d 1372,1379 (9th Cir. 1990). In 2006, the Ninth Circuit held in *Skoog* that it is "clearly established that a police action motivated by retaliatory animus was unlawful, even if probable cause existed for that action." 469 F.3d at 1235 (9th Cir. 2006). More recently in *Ford*, the Ninth Circuit reiterated that it is clearly established that police officers may not arrest an individual to retaliate against protected speech, even if there is probable cause for the arrest. 706 F.3d 1195-96. Thus, Ninth Circuit precedent has long held that the First Amendment forbids the specific conduct in which Stewart allegedly engaged. Accordingly, Stewart is not entitled to qualified immunity and his motion to dismiss plaintiff's First Amendment claim must be denied.

/////

/////

C. <u>California's Bane Act</u>

Plaintiff also asserts a state law cause of action under the Tom Bane Civil Rights Act ("Bane Act"), Cal. Civ. Code § 52.1, against defendant Stewart. ECF No. 22 at 8-9.

The Bane Act allows for a cause of action to be brought against any "person or persons, whether or not acting under color of law, [who] interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a). To state a claim under the Bane Act, a plaintiff must allege "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015).

Stewart first argue that plaintiff's Bane Act claim fails because he does not allege an interference with a civil right. ECF No. 24-1 at 8-9. As detailed above, plaintiff sufficiently alleges that defendant Stewart interfered with his First Amendment rights.

Stewart also argue that plaintiff fails to sufficiently allege interference by "threats, intimidation, or coercion" within the meaning of the Bane Act. *Id*. Relying on *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 955-56 (2010), Stewart contend that plaintiff must allege intimidation or coercion independent from the alleged interference of the underlying civil rights violation. ECF No. 24-1 at 8-9.

In *Shoyoy*, the plaintiff sought relief under the Bane Act after he was lawfully arrested but inadvertently detained for an extended period of time due to a paperwork error. 203 Cal. App. 4th at 951-953. The court observed that the Bane Act "was intended to address only egregious interferences with constitutional rights," and that the "act of interference with a constitutional right must itself be deliberate or spiteful" to establish a violation of the Bane Act. *Id*. at 958-59. Accordingly, the court concluded that "a wrongful arrest and detention, without more, cannot constitute 'force, intimidation, or coercion' for purposes of section 52.1." *Id*. at 960.

/////

However, *Shoyoye*'s independent coercion requirement only applies to cases where the civil rights violation is caused by unintentional or negligent conduct. *B.B. v. Cnty. of Los Angeles*, 25 Cal. App. 5th 115, 129-30 (2018). Furthermore, the Ninth Circuit recently held that "the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the connotational violation alleged, but rather a showing of the defendant's specific intent to violate the plaintiff's constitutional rights." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (2018).

Here, plaintiff does not allege that the violation of his First Amendment rights were the result of Stewart's negligence. Rather, he claims Stewart arrested him with the intent to chill his speech. Consequently, plaintiff sufficiently alleges a Bane Act claim against defendant Stewart.

IV. Conclusion

Accordingly, it is hereby RECOMMENDED that:

1. Defendants' motion to dismiss plaintiff's second amended complaint (ECF No. 24) be granted in part and denied in part;

2. Plaintiff's claims for violation of the Fourth and Fourteenth Amendments (causes of action one and two) be stricken; and

3. The motion be denied as to plaintiff's First Amendment retaliation claim and Bane Act claim against Stewart.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 4, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

13